IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08–cv–00331–WYD–KMT

ELIZABETH HUMPHREYS,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Kathleen M. Tafoya**
**United States Magistrate Judge**

    This case comes before the court on Defendant's Motion to Enforce Settlement and Brief in Support ("Mot."). [Doc. No. 34, filed January 13, 2009.] Plaintiff, now appearing in this matter *pro se*, filed a Letter [Doc. No. 41] which this court will characterize as a Response to the Motion to Enforce Settlement on January 29, 2009.[1]  Defendant filed "Defendant's Reply to Plaintiff's Response to Defendant's Motion to Enforce Settlement" on February 6, 2009. [Doc. No. 43.]

---

[1] As acknowledged by the plaintiff herself during the hearing on April 10, 2009, the letter filed with the court is largely illegible and of negligible value. Plaintiff made most of her arguments orally at the hearing.

Plaintiff alleges that on April 23, 2006 she was the driver of a vehicle involved in a motor vehicle accident caused by an uninsured motorist. Plaintiff's insurer was Defendant State Farm Mutual Insurance Company, (hereinafter "State Farm").  Her insurance policy included coverage for accidents caused by persons who either had no insurance coverage or who were under-insured for the damages sustained by plaintiff or others covered under her policy. Plaintiff alleges as a direct result of the motor vehicle accident, she sustained severe injuries but State Farm refused to pay claims pursuant to her under-insured motorist benefits.  Plaintiff claims this constitutes failure to act reasonably and in good faith.

State Farm does not dispute that plaintiff was involved in a serious automobile accident wherein she sustained injury but disputes that plaintiff is entitled to uninsured or under-insured motorist coverage under her policy because, among other things, the accident was primarily caused by the plaintiff illegally turning left in front of an oncoming vehicle instead of yielding the right of way as required.[2]  State Farm attributed more than 50% of the fault for the accident to plaintiff, thereby negating her entitlement to uninsured motorist benefits under the policy. State Farm asserts that "although Mr. Romero admitted speeding, he still had the right of way, on an unobstructed street, during non-adverse weather conditions, and that Plaintiff still had the majority of fault for the accident for turning left in front of Mr. Romero." (Mot.S.J. at 6, ¶ 17.)[3]

---

[2] It is undisputed that plaintiff turned left across oncoming lanes of traffic on a green light for both directions, not on an arrow permitting left turns only.

[3] Plaintiff is in possession of a letter from Israel Romero, the driver of the car who hit plaintiff's car broadside, in which he apologizes to the plaintiff and takes responsibility for causing the accident.  The parties do not dispute that Mr. Romero was "forced" to write the letter

Plaintiff, in her deposition, admitted that on the date of the accident she was shifting her vehicle, checking her speed and putting a CD into the CD player when she began her left turn and that, despite having a clear view down the street upon which Mr. Romero was traveling, she never saw him prior to being struck broadside.. (Mot.S.J., Exh. L, p.181, 183, 184, 189, 193-194, and 218-219.)  State Farm contends that plaintiff is only entitled to uninsured motorist benefits for compensatory damages if she would be legally entitled to collect those damages from Mr. Romero, the uninsured driver in the accident.  (Mot.S.J. at 12.)  Since the accident was caused by Ms. Humphreys, according to State Farm, she would be unable to collect from Mr. Romero whether he was insured or not.

On January 11, 2008, plaintiff commenced legal action in the District Court for the City and County of Denver. [Compl., Doc. No. 2.] The defendant removed the case to this court on February 15, 2008. [Doc. No. 1.]  On September 11, 2008, Defendant filed a Motion for Partial Summary Judgment requesting the court dismiss plaintiff's Second and Third Claims for bad faith and violations of the Colorado Consumer Protection Act, respectively.

Less than a week after this motion was filed, the parties participated in a settlement conference with the court.  The case was not resolved.  State Farm's final offer of settlement was $1,000.00.  After the settlement conference, plaintiff filed a stipulated Motion to Bifurcate the

---

by his Probation Officer after the accident. (Deposition of plaintiff, July 2, 2008, p. 263, lines 17-24, attached to Defendant's Motion for Partial Summary Judgment (hereinafter "Mot.S.J."), Doc. No. 22, Exhibit L.)

issues of liability and damages, requesting that the case be tried on liability prior to any evidentiary presentation as to damages. [Doc. No. 24.]

After a hearing before the District Court on October 15, 2008, defendant's Motion for Partial Summary Judgment was denied as withdrawn and the parties stipulated Motion for Bifurcation was also denied. With the costs of proceeding to trial mounting, the parties began negotiating for settlement again in December, 2008.

*Settlement Negotiations*

This court held a hearing on the instant motion on April 10, 2009. The defendant called former counsel for plaintiff, Christopher Dominick,[4] and co-counsel for defendant State Farm, Sarah Smyth O'Brien, as witnesses. The plaintiff did not present witness testimony. Mr. Dominick's and Ms. O'Brien's statements concerning the settlement negotiations between them were consistent with one another.

Mr. Dominick stated that in early December, 2008, he had a meeting in his office with the plaintiff where they discussed the costs associated with proceeding to trial, estimated to be $16,000.00 verses the possibility of some sort of settlement with State Farm. Mr. Dominick explained the ramifications of the denial of bifurcation to Ms. Humphreys given that expert medical testimony would be necessary to the damages alleged. Mr. Dominick testified that he

---

[4]On January 23, 2009, Mr. Dominick filed an Amended Motion to Withdraw as Counsel for Ms. Humphreys, stating that communication, trust, and cooperation between plaintiff and counsel had broken down. [Doc. No. 39] Mr. Dominick stated that the problems arose primarily when plaintiff had given him authority to arrange a settlement of the case and after he had come to an agreement with defendant, plaintiff changed her mind and refused to honor the settlement reached. (*Id.* at ¶ 4-6.)

explained the consequences to Ms. Humphreys in terms of a potential award of costs should a jury find her more than 50% at fault for the accident. Mr. Dominick testified that since "the medical bills were not an issue," he and Ms. Humphreys discussed settling the case for a fairly low dollar figure given State Farm's position at the settlement conference. At the conclusion of their meeting, the plaintiff left Mr. Dominick's office advising that she wanted to think about it and talk to her family before deciding on a course of action.

Some time later the same day, plaintiff called Mr. Dominick and left him a voice mail message that he should go ahead and attempt to settle the case. Unbeknownst to counsel for the defendant, Mr. Dominick brought to the court a copy on his computer of the voice mail message left for him by Ms. Humphreys. Ms. Humphreys did not object to Mr. Dominick playing her message in open court and the message was played through Mr. Dominick's computer.[5] The voice mail message from Ms. Humphreys stated that she authorized Mr. Dominick to settle the case and try to get the best offer he could. Further, Ms. Humphreys stated that she needed to get on with her life and, although she felt like "the medicals" should be further explored, she was agreeable to settle the case for whatever Mr. Dominick could get. The message ended, however, with Ms. Humphreys imploring her counsel to "please don't settle this for $1,000.00; please don't do that to my family."

Mr. Dominick thereafter on December 3, 2008 contacted Sarah O'Brien, counsel for defendants, with an offer to settle the case for $5,000.00. After discussion with her client, Ms.

---

[5]The message was recorded on the court's recording equipment and is part of the record of the proceedings.

O'Brien, on December 4, 2008, contacted Mr. Dominick advising that State Farm accepted the offer. On December 4, 2008, Mr. Dominick put the essential terms of the settlement in writing in an email to Ms. O'Brien. Shortly thereafter, State Farm issued a check to Ms. Humphreys and Ms. Sawaya, co-counsel to Mr. Dominick, and mailed it to Ms. Sawaya. That check has been neither cashed nor returned to State Farm.

Approximately two weeks after the agreement to settle was reached on December 4, 2008, Mr. Dominick testified that he and Ms. Humphreys communicated further and Ms. Humphreys said she had a change of heart and did not want to settle the case for $5,000.00. She complained that the settlement figure was too low and she told Mr. Dominick she wanted to proceed to trial. On December 18, 2008, Mr. Dominick advised Ms. O'Brien that there were some problems getting the paperwork in order for the settlement. Mr. Dominick testified that he thereafter attempted to persuade Ms. Humphreys to honor the settlement agreement, especially in light of the costs which would need to be incurred if the case proceeded, especially given her potential comparative negligence and responsibility for costs should she lose at trial. Ms. Humphreys refused and thereafter Mr. Dominick advised defense counsel of Ms. Humphreys position regarding the settlement and moved to withdraw from the case.

Plaintiff argued at the hearing that she should not be held to the terms of the settlement agreement because she would only realize approximately $1,000.00 net from the $5,000.00 settlement due to attorney's fees and costs.[6] She argued that because she would only actually

---

[6] Mr. Dominick had testified that he had offered to waive his attorney fees so that Ms. Humphreys could net more of the settlement proceeds herself.

receive $1,000.00, the offer to settle for $5,000.00 violated the authority she had given to Mr. Dominick.  Ms. Humphreys presented no evidence to support the claim that she would receive only $1,000.00 net from the settlement proceeds. Ms. Humphreys adamantly and repeatedly argued that the case was worth more than $5,000.00 and that she would never have authorized Mr. Dominick to settle the case for $5,000.00 in spite of her own words on the voice mail message and the undisputed fact that State Farm had never previously offered more than $1,000.00 to settle the case.

Plaintiff's Exhibit One was admitted.  Exhibit One is a letter sent from State Farm to Elizabeth Humphreys on December 12, 2008 confirming the settlement of the case in the amount of $5,000.00.  Ms. Humphreys at some point wrote on the bottom of the letter,[7] "P.S. No I have not agreed to 5,000,- This is wrong everything about the whole thing & the fact is I suffer everyDay of my life so do my Boy's."  There was no evidence that the letter with notations was ever mailed back to State Farm and State Farm's attorney denied having a copy of Exhibit One in the files pertaining to the case.  In any event, given the date on which the original letter was drafted – eight days after State Farm had accepted Mr. Dominick's settlement offer and issued the settlement check – the notations on the letter are merely consistent with plaintiff's repudiation of the agreement as testified to by Mr. Dominick, whether or not Ms. Humphreys' actually transmitted the letter to State Farm.

---

[7] The writing on the bottom of the letter submitted to the court appears to be the original.

*Legal Standards*

A settlement agreement is a contract between the parties to end judicial proceedings. *DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1247 (Colo. App. 2001); *Citywide Bank of Denver v. Herman*, 978 F. Supp. 966, 977 (D. Colo. 1997); *Rauch v. Sutphin Elec. Motors Corp.*, 2007 WL 184667, *4 (D. Colo. 2007). The court must apply state contract law to issues involving the formation, construction, and enforcement of a settlement agreement. *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000).

"A contract may be evidenced by showing that counsel had the authority to extend an offer and that the other party accepted it." *In re Custody of Nugent*, 955 P.2d 584, 589 ((Colo. App. 1997). "Once it is shown that an attorney has entered into an agreement to settle a case, a party who denies that the attorney was authorized to enter into the settlement has the burden to prove that authorization was not given." *Trujillo v. New Mexico*, 1999 WL 63885 (10th Cir. 1999) (*citing Turner v. Burlington N. R.R.*, 771 F.2d 341, 345-46 (8th Cir. 1985)). Whether an evidentiary hearing is required to resolve material facts concerning the existence or terms of a settlement agreement is to be determined on a case-by-case basis." *Swift-Eckrich, Inc. v. Advantage Systems, Inc.*, 55 F. Supp. 2d 1280, 1284 (D. Kan. 1999) (citing *Johnson v. Landmark Plaza, Ltd.*, 16 F.3d 416, 1994 WL 36773 (10th Cir. 1994)).

A settlement and compromise is a contract to end judicial proceedings, and accordingly, for it to be binding and enforceable, there must be a "meeting of the minds" as to its terms and conditions. *H. W. Houston Construction Co. v. District Court*, 632 P.2d 563, 565 (Colo. 1981). The Tenth Circuit has stated, "We construe a settlement stipulation in the same manner as a

contract to determine how it should be enforced." *Republic Resources Corp. v. ISI Petroleum West Caddo Drilling Program 1981*, 836 F.2d 462, 465 (10th Cir. 1987).  The existence of a settlement agreement, like any contract, is generally a question of fact.  *DiFrancesco*, at 1247; *Kaufman v. American Family Mut. Ins. Co.*, 2007 WL 437641, *1 (D. Colo. 2007) (regarding a letter which plaintiff claimed constituted a settlement agreement). The fact that parties contemplate preparing a written agreement does not necessarily render a verbal agreement invalid. *DiFrancesco*, at 1248.

"A settlement agreement need not be in writing to be enforceable."   *Nugent*, 955 P.2d at 589.  *See also Yaekle v. Andrews*, 195 P. 3d 1101, 1108 (Colo. 2008) (the language of Colo. Rev. Stat. 13-22-308(1) does not abrogate the common law principles of contract formation and the ability of the parties to create binding oral agreements.); *GLN Compliance Group, Inc. v. Aviation Manual Solutions, LLC*, — P.3d —, 2008 WL 4592371, *11 (Colo. App. Oct. 16, 2008) (same).  *But see Spatziani v. Corrections Corp. of America*, 2009 WL 586386 (D. Colo. 2009) (written agreement may be a material term of a settlement agreement).

A contract cannot be rescinded or avoided because one party made a unilateral mistake concerning a contract term.  *In re Marriage of Manzo*, 659 P.2d 669, 672 (Colo. 1983).  A trial court may summarily enforce a settlement agreement entered into during the litigation if it is undisputed that a settlement exists.  *DiFrancesco*, at 1247; *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004); *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993); *Rauch v. Sutphin Elec. Motors, Corp.*, 2007 WL 184667, *4 (D. Colo. 2007).  Likewise, "later dissatisfaction with the terms of a stipulated compromise agreement is not sufficient grounds to

set it aside." *Royal v. Colorado State Personnel Board,* 690 P.2d 253, 255 (Colo. App. 1984); *Recreational Development Co. of America v. American Const. Co.,* 749 P.2d 1002, 1005 (Colo. App. 1987). Changing one's mind about a contract is not grounds to avoid the ramifications of an enforceable contract. As stated in *Woods v. Denver Dep't. of Revenue, Treasury Div.*, 45 F.3d 377, 378 (10th Cir. 1995), "a party who knowingly and voluntarily authorizes the settlement of her claims cannot avoid the terms of the settlement simply because she changes her mind."

There is a strong public policy favoring dispute resolution rather than continued litigation. "When considering alternative consequences, we will defer to results that encourage the settlement of disputes." *Smith v. Zufelt*, 880 P.2d 1178, 1185 (Colo. 1994); *see also Copper Mountain, Inc. v. Poma of Am., Inc.*, 890 P.2d 100, 106 (Colo. 1995) (important public policy exists in favor of resolution of disputes); *Colo. Ins. Guar. Ass'n v. Harris*, 827 P.2d 1139, 1142 (Colo. 1992) (public and judicial policies favor the settlement of disputes); *White v. Jungbauer*, 128 P.3d 263, 265 (Colo. App. 2005)(similar).

### *Findings*

After the evidentiary hearing, the court finds as follows:

1.      On December 3, 2008, plaintiff gave express, implied and apparent authority to Christopher Dominick, her attorney, to settle her case for whatever dollar figure he could get with the sole and only restriction that the total settlement amount be more than $1,000.00.

2. Contrary to the arguments now advanced by the plaintiff, at the time the authority was given to Mr. Dominick to settle the case, the $1,000.00 referenced by Ms. Humphreys referred to a total settlement amount.

3. Consistent with the directive from Ms. Humphreys, Mr. Dominick made an offer to settle the case to the defendants in the amount of $5,000.00. That amount was well within his express authority, was five times the amount previously offered in settlement by defendants and five times more than the figure Ms. Humphreys said was not acceptable to her to settle the case.

4. On December 4, 2008, the defendants accepted the offer of settlement extended it by Mr. Dominick on plaintiff's behalf and, in reliance, drafted and mailed a check to the plaintiff and one of her attorneys for $5,000.00.

5. On December 4, 2008, the parties entered into a valid contractual settlement agreement.

6. Ms. Humphreys, several weeks after the settlement was finalized and after the defendant had already tendered payment in reliance, simply changed her mind about the settlement amount she had previously authorized.

WHEREFORE, this Court **RECOMMENDS**

1. Defendant's Motion to Enforce Settlement and Brief in Support [Doc. No. 34] be GRANTED.

2. The case, having been settled by mutual agreement of the parties on December 4, 2008, be dismissed with prejudice, each party to pay his, her or its own costs and fees.

## ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the

ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 17th day of April,  2009.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge